IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAROL NOVAK, Plaintiff, v. LIFE INSURANCE COMPANY OF NORTH AMERICA and DISCOVERY FINANCIAL SERVICES WELFARE BENEFITS PLAN Defendants. | 12 C 9434 Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

On November 27, 2012, Plaintiff Carol Novak filed this suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), alleging that Defendant Life Insurance Company of North America ("LINA") incorrectly denied her claim for long-term disability benefits under a benefit plan (the "Plan") offered by her former employer, Discover Financial Services. Because the standard of review governing Novak's claims will determine the course of these proceedings, including discovery, the Court ordered that the issue be briefed and resolved at the threshold. With the benefit of the parties' briefs, the court concludes that the *de novo* standard of review governs Novak's long-term disability claim and that additional discovery beyond the administrative record is not appropriate at this time.

**DISCUSSION**

**I.  Standard of Review**

ERISA does not set out the appropriate standard of review for actions under § 1332(a)(1)(B) challenging benefit eligibility determinations. To fill this gap, courts have held

that a denial of insurance benefits is reviewed *de novo* under ERISA "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114-15 (1989); *see also Conkright v. Frommert*, 559 U.S. 506 (2010); *Black v. Long Term Disability Ins.*, 582 F.3d 738, 743 (7th Cir. 2009); *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 980 (7th Cir. 1999). When the plan gives the administrator discretionary authority, the standard of review is deferential and court "will set aside an administrator's decision only if it is arbitrary and capricious." *Black*, 582 F.3d at 743-44 (citing *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 332 (7th Cir. 2000); *Aschermann v. Aetna Life Ins. Co.*, 689 F.3d 726, 728 (7th Cir. 2012); *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007). In order for a plan to be grant discretionary authority to the fiduciary, "[t]he reservation of discretion must be communicated clearly in the language of the plan, but the plan need not use any particular magic words." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008); *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006) (plan should "clearly and unequivocally state that it grants discretionary authority").

A. **The Plan Terms**

The Plan designates LINA as the "Claims Administrator" and fiduciary of the LTD program and delegates to LINA "full discretionary authority to determine claims and appeals under such Participating Program." Specifically, § 2.9(a) of the Plan document, entitled "Claims Administrator," provides:

> "Claims Administrator" means, with respect to any Participating Program, the person(s) or entity(ies) appointed by the Plan Administrator to decide, in its sole discretion, claims for benefits,

> or the person(s) or entity(ies) appointed by the Plan Administrator to decide, in its sole discretion, appeals of denied claims for benefits …. The Claims Administrator will be a fiduciary (with respect to the authority delegated to the Claims Administrator) of the Plan.
>
> (a) <u>Fully Insured Participating Programs</u>. The Claims Administrator for the insured Participating Programs will be the insurance company issuing the insurance policy or contract. Each Claims Administrator under an insured Participating Program will have full discretionary authority to determine claims and appeals under such Participating Program, subject to the terms of the insurance policy contract under which benefits are provided.

(Dkt. 23-1, p. 12.) In this case, LINA is the "Claims Administrator" and fiduciary for the LTD program under § 2.9(a) because it issued the insurance policy that provides the LTD benefits. Additionally, in a section entitled "Claims and Appeals Process Under the Discover Benefits Plan," the Summary Plan Description states:

> **What else should I know about how the reviewers make decisions?**
>
> The administrators and fiduciaries of Discover's benefits plans, including the Reviewers, have discretionary authority to interpret the plans and make determinations under the plans. Any decision made pursuant to this authority is given full force and effect unless arbitrary and capricious.

(Dkt. 23, Ex. C, p. 140.) In a section entitled "Other Important Information," the Summary Plan Document provides:

> **Discretionary Authority of Plan Administrator and Other Plan Fiduciaries**
>
> In carrying out their respective responsibilities under the Plan, the Plan Administrator and other Plan fiduciaries shall have the exclusive right and discretionary authority to make any findings necessary or appropriate for any purpose under the plan, including to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits. Any interpretation or determination made pursuant to such discretionary authority shall

3

>   be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(*Id.* at 155.)

### B. The Discretionary Language in the Plan Document does Not Conflict with the Insurance Policy

Section 1.3(b) of the Plan, which governs conflicts, provides that "[i]f a Participating Program is insured and there is a conflict between the specific terms of the Program Document and the terms of the Plan, the Program Document will control." (Dkt. 23-1, p. 9.) Novak argues that based on a conflict between the Plan document and the insurance policy, the Plan document cannot be read to grant discretionary authority to LINA with respect to the LTD component program of the Plan. Specifically, Novak points to the fact that the Plan document contains a broad conferral of discretion from the Plan Administrator to any claims review fiduciary while the insurance policy contains no discretionary clause.

The Court finds that the Plan document's discretionary language does not conflict with any term contained in the insurance policy. Instead, it contains an additional term conferring discretionary authority to a fiduciary. Novak does not dispute that the Plan document's conferral of jurisdiction refers to all components of the plan and that the Plan specifically incorporates by reference the insurance policy. Taking the plan documents as a whole, the Plan language unequivocally grants discretionary authority to LINA. *See Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7th Cir. 2012) ("A district court conducts de novo review of a denial of benefits under an ERISA plan unless the *plan documents* grant the claim fiduciary discretionary authority to construe the policy terms to decide eligibility benefits ….") (emphasis added); *see, e.g., Borich v. Life Ins. Co. of N. Am.*, No. 12 C 734, 2013 WL 1788478, at *2 (N.D. Ill. Apr. 25, 2013) ("[discretionary language] is not rendered ineffective

merely because it appears in plan documents other than the policy."). Accordingly, the Court rejects Novak's argument that the discretionary clause contained in the Plan document does not apply to the Plan's LTD component simply because the clause is not reiterated in the insurance policy.

### C. Illinois Law Invalidates the Plan's Grant of Discretionary Authority to LINA

Novak next argues that even if the Plan documents grant LINA discretionary authority with respect to the LTD component of the Plan, any such grant is invalid pursuant to a regulation promulgated by the Illinois Department of Insurance, 50 Ill. Adm. Code tit. § 2001.3 ("the DOI Regulation"). The DOI Regulation provides:

> No policy, contract, certificate, endorsement, rider, application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are consistent with the laws of this State.

*Id.* The purpose of the DOI Regulation is to:

> prohibit all such policies from containing language reserving sole discretion to interpret policy provisions with the insurer. The legal effect of discretionary clauses is to change the standard for judicial review of benefit determinations from one of reasonableness to arbitrary and capricious. By prohibiting such clauses, the amendments aid the consumer by ensuring that benefit determinations are made under the reasonableness standard.

29 Ill. Reg. 10172 (July 15, 2005).

### 1. The DOI Regulation Applies Notwithstanding that it Appears in the Plan Document Instead of the Insurance Policy

Defendants maintain that the DOI Regulation does not invalidate the clause granting LINA discretionary authority because the clause appears in the Plan document, not in the

insurance policy. The Plan document, according to Defendants, is not "a policy [or] contract to provide, deliver, arrange for, pay for, or reimburse any of the costs of health care services or of a disability."

Courts in this district have rejected the argument that § 2001.3 does not apply by virtue of the fact that the language conferring discretion appears only in the plan document and not in the insurance policy itself. *See, e.g., Borich*, 2013 WL 1788478, at *4 (to hold that the regulation cannot apply to Plan documents would be "both contrary to the plain language of the regulation and the clear import of the language …. The regulation's bar on insurer interpretive discretion would be meaningless … if it could be avoided by the expedient of entering into a separate agreement, outside the insurance policy, that provides the same discretion that § 2001.3 takes away"); *DiFatta v. Baxter Int'l, Inc.*, No. 12 C 5023, 2013 WL 157952, at *3 (N.D. Ill. Jan. 15, 2013) (section 2001.3 barred a grant of discretion to the LTD insurer despite the fact that the discretionary language appeared in the master plan document and not the insurance policy); *Ehas v. Life Ins. Co. of N. Am.*, No. 12 C 3537, 2012 WL 5989215, at *5–7 (N.D. Ill. Nov. 29, 2012) (section 2001.3 applied despite the fact that the insurance policy contained no language granting discretion to LINA because another plan document—the appointment of claims review fiduciary—did contain a clause stating that LINA would have discretion to interpret the insurance policy).

In *Ehas*, for example, the court relied upon the Illinois Department of Financial and Professional Regulation's interpretation of § 2001.3 stating that it aims to (1) strip LTD insurers of discretion when making decisions on LTD benefits claims, and (2) prevent an "arbitrary and capricious" standard of review in such cases. 2012 WL 5989215, at *6 (citing 29 Ill. Reg. 10172 (July 15, 2005)). Addressing the absence of discretionary language in the policy itself, the court

found that the plain language of the regulation makes it applicable to more than just insurance policies because "[t]he regulation sweeps broadly, including not only an insurance 'policy,' but a 'contract, certificate, endorsement, rider application or agreement.' " *Id.* The court reasoned that allowing disability insurers to circumvent the Illinois regulation by placing the discretionary clause in a plan document rather than in the insurance policy would "elevate form over substance." *Id.* (quoting *Curtis v. Hartford Life & Acc. Ins. Co.*, No. 11 C 2448, 2012 WL 138608, at *7 (N.D. Ill. Jan. 18, 2012)). The Court finds this reasoning persuasive and holds that the DOI Regulation applies to the discretionary clauses contained in the Plan document and Summary Plan Description.

### 2. The DOI Regulation is Not Preempted by ERISA

Defendants next argue that even if the DOI Regulation applies to the Plan document, it is preempted by ERISA. ERISA's preemption provision states that ERISA "supercede[s] any and all State laws so far as they may now or hereafter relate to any employee benefits plan." 29 U.S.C. § 1144(a). The Supreme Court has held a state law "relates to" an ERISA plan if it either has a "connection with" or "reference to" such a plan. *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990). In this case, § 2001.3 prohibits employers from delegating discretionary authority to a fiduciary in a trust instrument that governs a plan. Thus the regulation has a "connection with" and "reference to" an employee benefit plan.

However, ERISA's savings clause protects from preemption "any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Thus, "a State law regulating insurance is saved from ERISA's preemption provision thereby preserving State regulation of the substantive terms of insurance policies, even those policies that fall within ERISA's purview." *Zaccone v. Standard Life Ins. Co.*, No. 10 C 00033, 2013 WL 1849515

7

(N.D. Ill. May 1, 2013) (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002), *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985), and *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 363 (1999)).

In *Kentucky Ass'n of Health Plans v. Miller*, 538 U.S. 329 (2003), the Supreme Court set forth two requirements a state insurance regulation must satisfy in order to be saved from ERISA's preemption clause. First, the state law "must be specifically directed toward entities engaged in insurance." *Id.* at 342 ("[L]aws of general application that have some bearing on insurers do not qualify."). In this case, the Defendants argue that the DOI Regulation fails to satisfy the first requirement because it is directed toward plan sponsors and trust instruments, not entities engaged in insurance.

The fact that entities other than insurance companies may be affected by a state regulation does not take that regulation outside the scope of the ERISA savings clause. The *Miller* Court explained:

> It is of course true that as a *consequence* of Kentucky's AWP laws, entities outside the insurance industry (such as health-care providers) will be unable to enter into certain agreements with Kentucky insurers. But the same could be said about the state laws we held saved from pre-emption in [*FMC Corp. v. Holliday*, 498 U.S. 52 (1999)] and [*Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002)]. Pennsylvania's law prohibiting insurers from exercising subrogation rights against an insured's tort recovery, *see* [*FMC Corp.*], also prevented insureds from entering into enforceable contracts with insurers allowing subrogation. Illinois' requirement that HMOs provide independent review of whether services are 'medically necessary,' [*Rush Prudential*], likewise excluded insurers from joining an HMO that would have withheld the right to independent review in exchange for a lower premium. Yet neither case found the effects of these laws on noninsurers, significant though they may have been, inconsistent with the requirement that laws saved from pre-emption by § 1144(b)(2)(A) be 'specifically directed toward' the insurance *industry*. Regulations 'directed toward' certain entities will almost always

8

> disable other entities from doing, with the regulated entities, what
> the regulations forbid; this does not suffice to place such regulation
> outside the scope of ERISA's saving clause.

*Id.* at 335–36 (first emphasis in original; second emphasis added).

The DOI Regulation, by prohibiting insurers from granting fiduciaries discretionary authority to interpret plan terms, is clearly directed toward "entities engaged in insurance." *See Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009) ("It is well-established that a law which regulates what terms insurance companies can place in their policies regulates insurance companies."). The fact that the regulation also imposes limitations on Plan fiduciaries does not change the outcome of the analysis.

The second requirement under *Miller* is that the state law "substantially affect the risk pooling arrangement between the insurer and the insured." 538 U.S. at 338. The *Miller* Court explained the its rationale for imposing this requirement:

> Otherwise, any state law aimed at insurance companies could be deemed a law that 'regulates insurance,' contrary to our interpretation of § 1144(b)(2)(A) in *Rush Prudential*, 536 U.S., at 364, 122 S.Ct. 2151. A state law requiring all insurance companies to pay their janitors twice the minimum wage would not 'regulate insurance,' even though it would be a prerequisite to engaging in the business of insurance, because it does not substantially affect the risk pooling arrangement undertaken by insurer and insured.

*Id.*

Defendants maintain that § 2001.3 affects the substance of the relationship between the plan sponsor and the insurer-fiduciary, not the risk pooling arrangement between the insurer and insured participants. Indeed the petitioners in *Miller* raised a near-identical argument, asserting that the state laws at issue in that case failed to satisfy the second requirement because "they

9

[did] not alter or affect the terms of insurance policies, but concern only the relationship between insureds and third-party providers." 538 U.S. at 338. The *Miller* Court disagreed:

> We have never held that state laws must alter or control the actual terms of insurance policies to be deemed "laws … which regulat[e] insurance" under § 1144(b)(2)(A); it suffices that they substantially affect the risk pooling arrangement between insurer and insured" by alter[ing] the scope of permissible bargains between insurers and insureds ….

*Id.* 338–39.

In this case, the DOI Regulation effectively changes the standard of review federal courts will apply when reviewing claim determinations from arbitrary and capricious to *de novo*. Under *de novo* review, district courts will be permitted to make "independent decisions" regarding benefit claims and will no longer be limited to overturning only those decisions that they find "downright unreasonable." The likely result is that district courts will overturn more claims denials, ultimately leading to more claims paid than under the arbitrary and capricious standard. Thus, the DOI Regulation substantially affects the risk pooling arrangement between insurers and insureds. *See, e.g., Ehas*, 2012 WL 5989215, at *9 (section 2001.3 "satisfies *Miller's* second requirement …. By preventing an insurer from having discretion in interpreting terms, Section 2001.3 may give insureds greater leeway to bargain over the substance of those terms. The regulation may also compel insurers to offer different terms up front, since they can no longer dictate their interpretation"); *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09 C 4819, 2012 WL 3903780, at *7 (N.D. Ill. Sept. 6, 2012) (section 2001.3 "narrows the scope of permissible bargains between insurers and insured, because Illinois 'insureds may no longer agree to a discretionary clause in exchange for a more affordable premium' ") (quoting *Morrison*, 584 F.3d at 844–45); *Ball v. Standard Ins. Co.*, No. 09 C 3668, 2011 WL 759952, at *4 (N.D. Ill. Feb. 23,

2011) (finding that a state law satisfies the *Miller* test if it "alters the scope of permissible bargains between the insurer and insureds," recognizing that § 2001.3 substantially affects the type of risk pooling arrangements that insurers may offer because the potential consequences of § 2001.3 will be considered and factored into insurance premiums due to increased insurance costs and a greater number of claims paid).

Accordingly, because the DOI Regulation satisfies both requirements set forth in *Miller*, the regulation is saved from preemption.

While the Seventh Circuit has not yet opined on whether § 1144(b)(2)(A) saves § 2001.3 from preemption, two other Courts of Appeals, in reviewing nearly identical state laws banning discretionary clauses, have held that ERISA does not preempt such laws. *See, e.g., Am. Council of Life Insurers v. Ross*, 558 F.3d 600 (6th Cir. 2009) (Michigan regulation "prohibiting insurers from issuing … insurance contracts or policies that contain discretionary clauses" saved from preemption under ERISA); *Morrison*, 584 F.3d 837 (9th Cir. 2009) (practice of disapproving insurance contracts with discretionary clauses saved from preemption under ERISA); *cf Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141 (10th Cir. 2009) (finding that a Utah regulation establishing safe-harbor language and dictating font requirements for discretionary clauses was preempted by ERISA because it did not meet the second prong of the *Miller* test, but adding that the case would have been different if the regulation "imposed a blanket prohibition on the use of discretion-granting clauses") (citing *Morrison* and *Ross*). Relying upon *Ross* and *Morrison*, district courts in the Northern District of Illinois have uniformly held that ERISA does not preempt § 2001.3. *See Zaccone*, 2013 WL 1849515, at *3; *Ehas*, 2012 WL 5989215, at *10; *Zuckerman*, 2012 WL 3903780, at *7; *Barrett v. Life Ins. Co. of N. Am.*, 868 F.Supp.2d 779, 781 (N.D. Ill. 2012); *Curtis*, 2012 WL 138608, at *10; *Ball*, 2011 WL 759952, at *4; *see also Borich*,

2013 WL 1788478, at *4 (reaching the same conclusion without explicitly relying upon *Ross* or *Morrison*).[1]

Defendants submit that *Morrison* and *Ross*—and by extension the district court decisions relying on those cases—are wrongly decided because they fail to account for the important role judicial deference plays in ERISA's statutory scheme.[2] Defendants further assert that *Morrison*, *Ross*, and their progeny in the Northern District of Illinois have effectively been overturned by the Supreme Court's decision in *Conkright v. Frommert*, 130 S.Ct. 1640 (2010). In *Conkright*, the plan gave the administrator discretionary authority to interpret the terms of a pension plan. *Id.* at 1646. Applying deferential review, the Second Circuit held that the plan administrator's interpretation of certain plan provisions was unreasonable. *Id.* at 1645. The court then crafted its own exception to *Firestone* deference, holding that on remand the district court need not use a deferential standard when a plan administrator's previous construction of the same plan terms was found to violate ERISA. *Id.* The Supreme Court rejected this "one-strike-and-you're-out" approach, holding that "it has no basis in … *Firestone*, which set out a broad standard of deference without any suggestion that the standard was susceptible to *ad hoc* exceptions." *Id.* at 1646. The Court reasoned that "a single honest mistake in plan interpretation" does not strip the plan administrator's discretion or justify *de novo* review for subsequent related interpretations. *Id.* at 1644.

---

[1] One court in this district, after acknowledging *Ross*, *Morrison*, and the district court decisions cited above, expressly refused to "endorse the view that ERISA does not preempt § 2001.3 and laws like it" and instead rested its holding that § 2001.3 applied "solely on the ground that Defendants forfeited their preemption argument by failing to develop it." *Difatta*, 2012 WL 157952, at *3

[2] Defendants also attempt to further distinguish *Curtis v. Hartford Life & Acc. Ins. Co.*, 2012 WL 138608, on the basis that the discretionary clause in that case appeared in the group policy itself and not in the Plan document. While this distinction may arguably be relevant—though, as explained above, not determinative—for the purpose of deciding whether LINA has discretionary authority in deciding claims specifically related to the LTD component of the Plan, Defendants fail to develop any argument suggesting how this is at all relevant for the purpose of preemption.

In so holding, the *Conkright* Court discussed the tension between "ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Id.* at 1649. The Court explained that in drafting ERISA, Congress attempted to create a system that was not so complex "that administrative costs, or litigation expenses, unduly discourage employers from offering plans in the first place." *Id.* Instead, the goal of ERISA was to induce "employers to offer benefits by assuring a predictable set of liabilities." *Id.* Judicial deference, the Court stated, protects this careful balance "by permitting an employer to grant primary interpretive authority over an ERISA plan to the plan administrator." *Id.* Such deference "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings" and "promotes predictability" because an employer can rely on the expertise of a claims administrator rather than "worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review." *Id.*

Despite its language emphasizing the importance of judicial deference in federal ERISA proceedings, *Conkright* does not control the issue presented in this case. *Conkright* did not address, discuss, or mention, much less overturn, the Sixth and Ninth Circuit's decisions in *Morrison* and *Ross*. Indeed the issue of preemption was not even in play. At issue in *Conkright* was whether a federal court may strip an administrator of its discretionary authority on an "ad-hoc basis," not whether state regulatory bodies are precluded from regulating insurance by promulgating rules restricting deference-conferring clauses that otherwise clearly fall within the ambit of ERISA's savings clause. Therefore the Court declines the Defendants' invitation to take *Conkright*—a case that had nothing to do with preemption, insurance regulation, or ERISA's savings clause—and stretch its holding to effectively preclude any state law restricting the grant of discretionary authority to an administrator. *See, e.g., Zaccone*, 2013 WL 1849515, at

*5 ("*Conkright* does not alter the analyses in *Ross* and *Morrison* or require the conclusion that Section 2001.3 is outside ERISA's savings clause and has been preempted by ERISA.").

The remaining cases Defendants cite are also unpersuasive. Defendants cite: *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983), where the Supreme Court held that ERISA preempted a New York law requiring employers to structure their employee benefit plans to provide the same benefits for pregnancy-regulated disabilities as for other disabilities; *Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 197 (4th Cir. 2007), where the court struck down a law requiring employers to spend at least 8% of their total payrolls on employees' health insurance costs; and *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 378–80 (1999), where the Supreme Court found that ERISA preempted a California rule that required the employer to act as agent of the insurer in the performance of "duties of administering group insurance policies" under ERISA plans because the rule forced the employer, as plan administrator, "to assume a role, with attendant legal duties and consequences, that it had not undertaken voluntarily. However, as at least one other court in this district has noted, "each of these cases involved legislation that sought to regulate employers' benefit obligations rather than the interpretation of an insurance policy." *Borich*, 2013 WL 1788478, at *4 n.2. The DOI Regulation, by contrast, "has no direct impact on the employer or what benefits it must provide, but rather affects the way that the insurance policy is construed." *Id.*

Accordingly, because the Court finds that the DOI Regulation strips Discover Financial Services Welfare Benefits Plan's ability to grant LINA discretionary authority to construe Plan terms and determine eligibility for benefits and is not preempted by ERISA, the Court will apply *de novo* review and make an independent decision as to whether Novak was under the Plan's terms.

## II. Scope of Discovery

Nevertheless, even under the *de novo* standard of review, Novak is not permitted to engage in additional discovery beyond the administrative record at this time. In *Estate of Blanco v. Prudential Ins. Co. of Am.*, 606 F.3d 399 (7th Cir. 2010), the Seventh Circuit set forth the approach for determining the scope of discovery in an ERISA proceeding where the district court applies a *de novo* standard of review. Under *de novo* review, district courts have "discretion to limit the evidence to the record before the plan administrator, or to permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment." *Id.* at 402 (quoting *Patton v. MFS/Sun Life Fin. Distributors, Inc.*, 480 F.3d 478, 490–91 (7th Cir. 2007)). The *Blanco* court stated four factors courts must consider in determining whether extra-record discovery should be allowed: (1) whether "the new evidence is necessary to make an informed and independent judgment"; (2) whether the parties had an opportunity to present evidence at the administrative level; (3) whether the extra-record discovery relates to the plan terms or historical facts concerning the claimant; (4) whether the administrator faces a conflict of interest. *Id.* at 402; *Patton*, 480 F.3d at 491. "The most important factor … is whether the new evidence is necessary to make an informed judgment." *Blanco*, 606 F.3d at 402. As a general matter, however, "the district court should restrict itself to the evidence before the plan administrator" and "review evidence beyond that which was before the plan administrator only when circumstances clearly establish that additional evidence is necessary." *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) (citing *Quisenberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1025 (7th Cir. 1993)).

In this case, Novak argues that extra-record discovery should be allowed because allowing the Defendants to determine what constitutes the administrative record would "only

encourage administrators to under-disclose." In Novak's view, the "only way to determine whether the purported administrative record supplied by LINA actually contains the information LINA knew … is through limited purpose discovery requests." Novak also argues that she should be allowed to engage in additional discovery so that the Court may render an informed decision regarding whether any additional medical affidavits may be introduced. Neither reason presents sufficient basis allowing additional discovery. The mere assertion that allowing the Defendants to determine what constitutes the administrative record may lead to abuse plainly does not satisfy the factors set forth in *Blanco*. Indeed under Novak's approach, courts would allow for extra-record discovery in every case involving *de novo* review. Novak does not cite— nor could this Court find—any support for such a proposition.

Nor does Novak explain why additional discovery is necessary for the Court to make an informed and independent judgment regarding her condition. Additional discovery is not granted as a matter of course. *See Patton*, 480 F.3d at 492 ("A court should not automatically admit new evidence whenever it would help to reach an accurate decision …. The record calls for additional evidence only where the benefits of increased accuracy exceed the costs."). In *Krolnik*, for example, the Seventh Circuit determined that the district court should have permitted extra-record discovery where there was conflicting evidence in the administrative record. 570 F.3d at 843. In *Patton*, the court permitted extra-record discovery solely to clarify an unexplained contradiction between two statements a treating physician made about the claimant's capacities. 480 F.3d at 492–93. On the other hand, in *Blanco*, the court denied extra-record discovery where the medical records on file were more than sufficient and left no "serious dispute" that the plaintiff suffered from a pre-existing condition. 606 F.3d at 402–03. Similarly, in *Ehas*, the court found that the plaintiff had not established a basis for extra-record discovery

because he "failed to sufficiently allege facts supporting the grant of discovery as to either the issues of disability or conflict of interest. 2012 WL 5989215, at *11. In *Ball*, the court, after determining that the *de novo* standard of review applied, denied a motion to compel depositions based on its finding that the experts' reports and the claimant's medical records, which were already part of the administrative record, were sufficient to enable the court to make an informed and independent judgment. 2011 WL 2708366, at *2.

Here, Novak alleges that LINA's medical reviewers refused to acknowledge her muscle testing results, ignored the results of her electromyogram ("EMG"), failed to acknowledge the results of her functional capacity evaluation ("FCE"), and never explained why the above-results should be discounted or disregarded. These allegations, if true, may establish that LINA's decision was incorrect (or even unreasonable). That, however, is a determination the Court will be able to make based on its own independent review of the administrative record. Aside from alleging that LINA made the wrong call, Novak offers no specific basis for allowing additional discovery at this time. Novak asserts that the Court may find helpful the affidavit of one of his pain specialists, Dr. Jay Joshi, but fails to articulate why Dr. Joshi's opinion is necessary for the court to form an independent and informed conclusion regarding her alleged disability. Unlike the plaintiffs in *Patton* and *Krolnik*, Novak points to no contradiction in the administrative record, nor does she identify a specific aspect of her treatment that is not adequately discussed in the files already contained within the administrative record. Accordingly, Novak has not shown that extra-record discovery is necessary for the Court to arrive at an independent determination regarding her long-term disability benefits claim.

Lastly, to the extent Novak seeks to take discovery regarding whether the Plan administrator's decision was influenced by a structural conflict of interest, such conflict is

irrelevant because the Court, proceeding under *de novo* review, will make an independent determination as to whether Novak was disabled under the Plan. As the Seventh Circuit explained in *Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640 (7th Cir. 2007):

> [W]hen *de novo* consideration is appropriate in an ERISA case … the court can and must come to an independent decision on both the legal and factual issues that form the basis of the claim. What happened before the Plan administrator or ERISA fiduciary is irrelevant …. That means that the question before the district court was not whether Prudential gave Diaz a full and fair hearing or undertook a selective review of evidence; rather, it was the ultimate question of whether Diaz was entitled to the benefits he sought under the plan.

*Id.* at 643 (citations omitted); *see, e.g., Borich*, 2013 WL 1788478, at *5 ("Because the Court will not rely in any way on LINA's denial of benefits, whether LINA's decision was influenced by a conflict of interest has no probative value whatsoever."); *Walsh v. Long Term Disability Coverage for All Emps. Located in the U.S. of DeVry, Inc.*, 601 F.Supp.2d 1035, 1043 (N.D. Ill. 2009) (finding any violations the plan administrator might have committed in denying an LTD claim irrelevant to the question of whether a claimant is eligible for benefits).

Accordingly, the Court finds that extra-record discovery unwarranted at this time.

## CONCLUSION

For the reasons stated, the Court will make an independent determination of whether Novak was disabled under the terms of the Plan. Novak's request to engage in extra-record discovery is denied at this time.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: July 9, 2013